UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VIRGIL E. HARRIS, JR., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-01475-JMS-MKK |
| | ) | |
| SALLIE MAE BANK, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Virgil Harris, Jr., who is an African American male, was a Servicing Representative at Defendant Sallie Mae Bank ("Sallie Mae") until his termination. He claims that during his employment, he was discriminated and retaliated against due to his race and sex and initiated this litigation against Sallie Mae on August 19, 2023, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Sallie Mae has now filed a Motion for Partial Dismissal of Plaintiff's Amended Complaint, [Filing No. 29], which is ripe for the Court's review.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations set forth in the Amended Complaint, the operative complaint in this case, which the Court must accept as true at this time:

### A.  Mr. Harris's Employment at Sallie Mae

Mr. Harris, who is an African American male, began working for Sallie Mae in May of 2019 as a Servicing Representative at its Indianapolis, Indiana office and held that position during his entire tenure at Sallie Mae. [Filing No. 27 at 3.]

### B.  The Return-To-Work Event

During a period of COVID-related shutdowns, Sallie Mae held a return-to-work event. [Filing No. 27 at 3.] Sallie Mae's Chief Executive Officer, Jonathan Whitter,[1] who is Caucasian,

---

[1] In its brief in support of its Motion for Partial Dismissal, Sallie Mae spells Mr. Whitter's name "Witter." [*See, e.g.*, Filing No. 30 at 2.] Because Mr. Harris uses "Whitter" in the Amended Complaint, [*see, e.g.*, Filing No. 27 at 3], the Court also uses that spelling in its Order.

traveled to the Indianapolis office along with other Sallie Mae executives for the return-to-work event. [Filing No. 27 at 3.] During a question-and-answer forum conducted by Mr. Whitter and others, Mr. Harris "brought up the subject of inflation and inquired as to whether there would be corresponding changes to SALLIE MAE's pay structure." [Filing No. 27 at 3.] Later, when Mr. Harris was returning to work with a group of employees, Mr. Whitter approached the group and stated that he wanted to introduce himself, to get everyone's first and last names, and to shake their hands. [Filing No. 27 at 3.] Mr. Whitter proceeded to shake hands with everyone in the group except Mr. Harris, refusing twice to shake his hand. [Filing No. 27 at 3.] Mr. Harris was the only African American male in the group. [Filing No. 27 at 3.]

The group then proceeded to a break room, where Mr. Whitter asked if anyone had issues or concerns they wanted to raise. [Filing No. 27 at 4.] Mr. Whitter then allowed comments from several employees, but would not allow Mr. Harris to make a comment. [Filing No. 27 at 4.] When the informal forum concluded, Mr. Harris approached Mr. Whitter and pointed out that Mr. Whitter had not shook Mr. Harris's hand or allowed him to comment in the informal forum. [Filing No. 27 at 4.] Mr. Whitter then walked Mr. Harris back to Mr. Harris's desk. [Filing No. 27 at 4.]

Mr. Harris then resumed working, and Mr. Whitter and another executive stood at the end of the row of desks watching Mr. Harris and then picked up headphones and acted as though they were listening in on calls. [Filing No. 27 at 4.] Mr. Harris perceived these actions as attempts at intimidation. [Filing No. 27 at 4.]

### C.   Mr. Harris Reports Mr. Whitter's Actions and Sallie Mae Responds

Mr. Harris subsequently reported Mr. Whitter's actions to the Sallie Mae Human Resources Department, stating that the incident where Mr. Whitter picked up headphones and acted as though he was listening in on calls should have been recorded on video by Sallie Mae's corporate security

3

system. [Filing No. 27 at 4.] Mr. Harris also provided the names of witnesses to the incident. [Filing No. 27 at 4.]

The Human Resources Department did not contact Mr. Harris's witnesses and it was not "able to produce a video recording of the incident." [Filing No. 27 at 4.] One of the witnesses contacted the Human Resources Department to relate her observations regarding Mr. Whitter's behavior, but the Human Resources Department did not substantiate Mr. Harris's claims. [Filing No. 27 at 4.] Instead, the Human Resources Department advised Mr. Harris that Mr. Whitter must have been joking due to Mr. Harris's comments during the public forum, but Mr. Harris did not perceive Mr. Whitter's actions as a joke and was "humiliated and demeaned by the process." [Filing No. 27 at 4.]

### D. Mr. Harris Files a Charge of Discrimination

In June 2022, Mr. Harris filed a Charge of Discrimination (the "First Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Indiana Civil Rights Commission ("ICRC"). [Filing No. 27 at 4-5.] In the First Charge, Mr. Harris "express[ed] his concerns with regard to [Mr.] Whitter's behavior, which [Mr. Harris] perceived as an act of racial discrimination and retaliation for attempting to engage in legitimate discourse with regard to SALLIE MAE's pay structure." [Filing No. 27 at 5.]

### E. Mr. Harris Receives a Verbal Warning Regarding His Performance

Shortly thereafter, Mr. Harris received a written notice of "Verbal Coaching" on a "Performance Improvement/Corrective Action Form" (the "Notice"), which constituted a verbal

4

warning regarding his performance.[2]  [Filing No. 27 at 5.]  The Notice, issued by Mr. Harris's supervisor who is Caucasian, was issued due to Mr. Harris's alleged "Average After Call Work" time, "which generally refers to the time taken to complete follow-up documentation of a telephone conversation between Servicing Representatives, such as [Mr. Harris], and customers of SALLIE MAE."  [Filing No. 27 at 5.]  Sallie Mae claimed that Mr. Harris's "Average After Call Work" time had previously exceeded the goal for that metric by less than fifteen seconds during the months of April and May 2022.  [Filing No. 27 at 5.]

When presented with the Notice, Mr. Harris felt that it was an act of harassment and discrimination.  [Filing No. 27 at 5.]  He was immediately called in to discuss the Notice with the Human Resources Department, "in what he perceived as a show of force by SALLIE MAE."  [Filing No. 27 at 5.]

### F. Mr. Harris Receives a Write-Up Regarding His Performance

On July 11, 2022, Mr. Harris received notice of a "write-up" (the "Write-Up") issued by his supervisor.  [Filing No. 27 at 5.]  The Write-Up was issued as a result of Mr. Harris having allegedly taken an average of 19.71 seconds too long to meet Sallie Mae's performance goal of 120 seconds to complete "after call work" during the month of June 2022.  [Filing No. 27 at 5-6.]

---

[2] Mr. Harris alleges that he received the Notice "shortly thereafter" the filing of the First Charge, "on June 28, 2022."  [Filing No. 27 at 5.]  However, he alleges that he filed the First Charge "on or about June 29, 2022," [Filing No. 27 at 5], which would have been after he received the Notice.  Because Mr. Harris specifically states that he received the Notice after he filed his First Charge, the Court assumes that the "June 29, 2022" date for filing the First Charge is a typographical error.

The June 2022 "after call work" time had already been referenced in the Notice,³ leaving Mr. Harris "virtually no time to improve his performance prior to the issuance of the 'write-up.'" [Filing No. 27 at 6.] Mr. Harris had not previously been written up during his employment with Sallie Mae, and had performed exceptionally well in all other aspects of his work during that time. [Filing No. 27 at 6.]

### G. Mr. Harris Files a Second Charge of Discrimination

On August 16, 2022, Mr. Harris filed a second Charge of Discrimination with the EEOC and the ICRC (the "Second Charge"), in which he stated that there was "'continuing action' with regard to SALLIE MAE's continuing pattern of retaliation against him." [Filing No. 27 at 6.]

### H. Mr. Harris Is Terminated

On November 4, 2022, despite taking steps to improve his performance following the Notice and the Write-Up, Mr. Harris received a notice of his termination of employment with Sallie Mae. [Filing No. 27 at 6.] Although there were disciplinary reasons noted in the termination letter as a purported basis for his termination, Mr. Harris had not received notice of progressive discipline, or any kind of notice, regarding the alleged disciplinary basis for his termination. [Filing No. 27 at 6.] Mr. Harris believes that other employees who had not filed a Charge with the EEOC "were afforded the protections of progressive discipline when faced with similar disciplinary actions, and further afforded the opportunity to improve their performance and remain employed." [Filing No. 27 at 6.]

---

³ Mr. Harris alleges that the Notice referenced his "Average After Call Work" time for April and May 2022, but does not mention June 2022. [Filing No. 27 at 5.] It is not clear if Mr. Harris means to allege that the June 2022 "after call work" time *was not already referenced* in the Notice, instead of that it had already been referenced, so that he had no time to improve his performance before the Write-Up was issued. In any event, this allegation is not relevant to Mr. Harris's discrimination claim based on a hostile work environment – the subject of Sallie Mae's Motion for Partial Dismissal.

Mr. Harris was never given the opportunity to review and/or contest the reasons for his termination and was never given notice or the opportunity to improve his performance prior to being terminated. [Filing No. 27 at 7.] Mr. Harris "believes that some or all of the allegations which led to his termination may have been fabricated, as an act of retaliation." [Filing No. 27 at 7.]

I.     The Lawsuit

Mr. Harris initiated this litigation on August 19, 2023, [Filing No. 1], and filed the operative Amended Complaint on January 31, 2024, [Filing No. 27]. Mr. Harris alleges that he was discriminated against on the basis of race due to a hostile work environment "through the actions of [Mr. Whitter] and the refusal of [Sallie Mae's] Human Resources [D]epartment to fully investigate the incident." [Filing No. 27 at 7.] He also alleges that Sallie Mae retaliated against him by: (1) "repeatedly reprimanding and disciplining [him] with regard to trivial matters as a means of harassment following the filing of his [First Charge]"; and (2) "accelerating the termination of [his] employment without engaging in progressive discipline or providing him with prior notice of the alleged violations which are listed as reasons for termination of his employment, following the filing of his [Second Charge]." [Filing No. 27 at 7.] He seeks a declaratory judgment that the challenged actions violate federal law, compensatory damages, punitive damages, and attorneys' fees and costs. [Filing No. 27 at 8.]

### III.
### DISCUSSION

In its Motion for Partial Dismissal, Sallie Mae argues that Mr. Harris sets forth two claims: (1) "race- and sex-based hostile work environment"; and (2) retaliation. [Filing No. 30 at 1.] It seeks dismissal of his hostile work environment claim only, arguing that he does not allege any facts which support an inference that Mr. Whitter harassed him because of his race or sex. [Filing

7

No. 30 at 4.] Specifically, it argues that Mr. Harris does not allege that Mr. Whitter only shook hands with employees who are not African American or not male, or that Mr. Whitter did not call on African Americans or males during his facility visit. [Filing No. 30 at 4-5.] It asserts that "[t]o the extent [Mr. Harris] alleges he was discriminated against because of his race and sex, his discrimination claims fail[ ] as the Seventh Circuit has not recognized a 'sex-plus' or 'race-plus' theory under Title VII." [Filing No. 30 at 5 (emphasis omitted).] Sallie Mae contends that Mr. Harris fails to plead facts that rise to the level of severe or pervasive conduct sufficient to create a hostile work environment. [Filing No. 30 at 5.] It notes that Mr. Harris's allegations "stem from a single, isolated incident – i.e., a one-day return to work event," and that "Seventh Circuit courts have dismissed allegations far more serious than a handshake snub or an employee not being asked for feedback." [Filing No. 30 at 5-6.] It argues that Mr. Harris's allegations "amount[ ] to nothing more than petty allegations that, one day, [Mr. Whitter] was not nice to him." [Filing No. 30 at 7.] Sallie Mae also argues that Mr. Harris has not alleged any conduct that interfered with his work performance and that he "admits he not only returned to his job duties immediately after the alleged incident, but continued to work for months until he was discharged." [Filing No. 30 at 7 (emphasis omitted).]

In his response, Mr. Harris argues that his allegations "describe a situation in which [he] perceived that he was treated differently, and in a manner worse than, other similarly situated employees not in a protected class, on the basis of a protected characteristic: namely, his race." [Filing No. 38 at 3.] He asserts that Sallie Mae relies upon cases that show "the scope of utterly cringeworthy behavior that an employer can get away with while somehow remaining within the boundaries of not sufficiently severe and pervasive," and that it "makes a clear effort to simply minimize the significance of [his] claims." [Filing No. 38 at 4 (quotations omitted).] Mr. Harris

8

contends that Mr. Whitter's actions in picking up a headset and appearing to listen in on customer calls impacted Mr. Harris's work because it caused him to be distracted and to perceive Mr. Whitter's actions as intimidation.  [Filing No. 38 at 4-5.]  He states that he was further humiliated and demeaned when his concerns were "once again marginalized and dismissed" by the Human Resources Department and that "[f]urther information and testimony with regard to the impacts and significance of [Mr.] Whitter's actions toward [Mr. Harris] would be expected to come forth during discovery." [Filing No. 38 at 5.]  Finally, Mr. Harris argues that Sallie Mae should not be permitted to seek dismissal of the retaliation claim because it characterizes its motion as one for partial dismissal and applying only to the discrimination claim, and that its Motion for Partial Dismissal "may be wholly improper…, especially considering the interconnected nature of [Mr. Harris's] claims in this matter and the interwoven factual allegations which are applicable to both claims."  [Filing No. 38 at 6.]

In its reply, Sallie Mae argues that Mr. Harris fails to address its arguments regarding his sex discrimination claim, so he has waived any opposition.  [Filing No. 39 at 2.]  It argues that Mr. Harris's belief that Mr. Whitter's conduct was racist is not enough to plausibly allege a race discrimination claim and that "[t]here is simply no connection whatsoever between [Mr. Whitter's] conduct and [Mr. Harris's] race." [Filing No. 39 at 4.]  Specifically, it argues that Mr. Harris does not "point to any statements or decisions made by any [Sallie Mae] employee, including [Mr. Whitter], which even have racist…undertones, or are indicative of hostility toward [Mr. Harris's] race"; "does not allege that [Mr. Whitter] treated other employees who identify as African-American…less favorably than employees outside of [that class]"; does not allege that Mr. Whitter "only called on, or shook hands with, Caucasian…employees during his visit"; and alleges that Mr. Harris was afforded an opportunity to share concerns during the informal question-and-answer

9

forum. [Filing No. 39 at 4.] Sallie Mae reiterates its argument that Mr. Harris has failed to allege facts showing the type of severe or pervasive conduct necessary for a hostile work environment claim. [Filing No. 39 at 6-7.] Additionally, it argues that it is "unaware of any precedent whatsoever which supports the proposition that [Mr. Harris's] race…discrimination claim should not be dismissed just because its facts overlap with his retaliation claim." [Filing No. 39 at 7 (emphasis omitted).]

### A. Mr. Harris's Claim For Discrimination on the Basis of Sex

Sallie Mae moved to dismiss Mr. Harris's claim related to sex discrimination and Mr. Harris did not respond to Sallie Mae's arguments, [*see* Filing No. 38 (Mr. Harris failing to address Sallie Mae's arguments regarding sex discrimination claim).] Because Mr. Harris did not address Sallie Mae's arguments that his sex discrimination claim should be dismissed, he has waived any opposition. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver."). Accordingly, the Court **GRANTS** Sallie Mae's Motion for Partial Dismissal to the extent it seeks dismissal of Mr. Harris's claim for discrimination on the basis of sex and that claim is **DISMISSED**.

### B. Mr. Harris's Claim for Discrimination on the Basis of Race

The Court notes at the outset that two different types of discrimination claims exist under Title VII – disparate treatment and hostile work environment. Mr. Harris alleges the latter in the claim at issue. [*See* Filing No. 27 at 1 ("During the course of his employment with SALLIE MAE, HARRIS was subjected to racial…harassment of such severity as to constitute a hostile work environment.").] Title VII prohibits employers from discriminating against employees based on their race. 42 U.S.C. § 2000e-2(a)(1). Hostile or abusive work environments are forms of sex [or race] discrimination actionable under Title VII. *Paschall v. Tube Processing Corp.*, 28 F.4th 805,

812 (7th Cir. 2022). Under Title VII, a work environment is hostile "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted).

To state a claim for race discrimination based on a hostile work environment under Title VII, a plaintiff must allege facts demonstrating that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Equal Emp. Opp. Comm. v. Village at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024). In determining whether the plaintiff has stated a claim that the work environment was "objectively hostile," the Court must consider "the totality of the circumstances, including: the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance," and the relationship between the harassing party and the party being harassed. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (quotation and citation omitted). Although the workplace need not be "hellish" to state a claim for hostile work environment, it must be "so pervaded by discrimination that the terms and conditions of employment are altered." *Id.* (quotations, citations, and alterations omitted).

Sometimes a plaintiff alleges continuing harassment or discrimination such that the court cannot determine the extent of the behavior at the motion to dismiss stage. *See, e.g., Brooks v. FedEx Supply Chain, Inc.*, 2019 WL 1746264, at *4 (S.D. Ill. Apr. 18, 2019) (denying motion to dismiss where "[i]t is impossible to determine the context and exact nature of the alleged

harassment from the pleadings"). Such is not the case here, as Mr. Harris bases his hostile work environment claim on encounters with Mr. Whitter that took place over the course of one day. Specifically, he focuses on his allegations that Mr. Whitter ignored him during the return-to-work event and the informal forum, but does not allege that those encounters affected the terms or conditions of his employment. And his allegation that Mr. Whitter picked up a headset and appeared to listen in on customer calls, which impacted his work because he was distracted and which appeared to him to be an act of intimidation, is an isolated incident based on a single action by Mr. Whitter. It is not sufficient to support a hostile work environment claim. *See Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) ("[O]ccasional…coarse, rude, or boorish behavior will not amount to a hostile work environment."); *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment.") (quotation and citation omitted); *Hobbs v. City of Chi.*, 573 F.3d 454, 464-65 (7th Cir. 2009) (vandalism of plaintiff's car and employer's failure to investigate it "is disgraceful, but that one act alone is not egregious enough to create a hostile work environment"); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) ("'[R]elatively isolated' instances of non-severe misconduct will not support a hostile environment claim.") (quoting *Weiss v. Coca-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993)).

Further, Mr. Harris's other allegations – that he complained to the Human Resources Department regarding his encounters with Mr. Whitter, that the Human Resources Department failed to contact witnesses or produce video of the encounter, that Mr. Harris was humiliated and demeaned by the failure to investigate the encounter, and that Mr. Harris received the Notice and Write-Up after filing the First Charge – all relate to his retaliation claim and do not support a claim

12

for discrimination based on a hostile work environment. And Mr. Harris's argument that his hostile work environment discrimination claim cannot be dismissed while his retaliation claim remains because the facts supporting each claim overlap is meritless. Indeed, courts frequently dismiss a discrimination claim and leave a retaliation claim to proceed because the elements of the two claims are distinct. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) ("In order for plaintiff's expression to be protected by [the retaliation provision of Title VII], the challenged practice need not actually violate Title VII. Instead, it is sufficient if the plaintiff has a reasonable belief [he] is challenging conduct in violation of Title VII.") (quotation and citation omitted); *Dean v. Ill. St. Univ.*, 2023 WL 2378563, at *5 (C.D. Ill. Mar. 6, 2023) ("It is not inconsistent to dismiss the discrimination claims while allowing the retaliation to proceed as a plaintiff can establish a retaliation claim even if the underlying discrimination claim does not succeed.").

In short, Mr. Harris does not adequately allege that the discrimination he faced from Mr. Whitter was so severe or pervasive as to alter the conditions of his employment and create a hostile or abusive working environment. Accordingly, the Court **GRANTS** Sallie Mae's Motion for Partial Dismissal of Plaintiff's Amended Complaint, [Filing No. 29], to the extent that it **DISMISSES** Mr. Harris's race discrimination claim based on a hostile work environment.

## IV.
### Conclusion

Mr. Harris has waived any argument that he has adequately alleged a discrimination claim based on his sex. As to his race discrimination claim based on a hostile work environment, Mr. Harris limits his allegations to his interactions with Mr. Whitter on one day, when Mr. Whitter visited Sallie Mae's Indianapolis office for a return-to-work event. While Mr. Whitter's alleged actions in failing to engage with Mr. Harris during a question-and-answer session, refusing to

shake Mr. Harris's hand, and acting as though he was listening in on customer calls were rude, offensive to Mr. Harris, and distracted him from his work for a short time that day, "[d]iscrimination laws do not mandate admirable behavior from employers, through their supervisors." *Johnson*, 892 F.3d at 900 (quotation and citation omitted).  Mr. Harris's allegations simply do not rise to the level of the severe and pervasive conduct required for a discrimination claim based on a hostile work environment.  The Court **GRANTS** Sallie Mae's Motion for Partial Dismissal of Plaintiff's Amended Complaint, [29], and Mr. Harris's race and sex discrimination claims are **DISMISSED WITH PREJUDICE**.[4]  No partial final judgment shall issue.

Mr. Harris's retaliation claim will proceed and the Court **REQUESTS** that the Magistrate Judge confer with the parties as soon as practicable regarding a schedule for resolving that remaining claim.

Date: 7/15/2024

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[4] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his Complaint once as a matter of course in response to a motion to dismiss.  *Brown v. Bowman*, 2011 WL 1296274, at *16 (N.D. Ind. Mar. 31, 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  Here, Mr. Harris filed an Amended Complaint after Sallie Mae filed its first Motion to Dismiss.  [*See* Filing No. 13; Filing No. 27.]  The Court is not required to give Mr. Harris another chance to plead his sex discrimination and race discrimination claims and, in its discretion, dismisses those claims with prejudice.  *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (court has discretion to deny leave to amend where there has been a "repeated failure to cure deficiencies").

14